FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTATE OF CLOVY JARAMILLO, deceased, through Christina Hernandez as the Administrator of his Estate,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SPOKANE; CHIEF CRAIG MEIDL, individually and in his professional capacity; OFFICER TIMOTHY SCHWERING, individually and in his professional capacity; OFFICER JACKSON HENRY, individually and in his professional capacity; OFFICER KOREY BJORNSTAD, individually and in his professional capacity,<br><br>Defendants. | No. 2:23-CV-00316-SAB<br><br><br>**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS** |

Before the Court is City Defendants' Second Motion for Judgment on the Pleadings, ECF No. 39. Plaintiff is represented by Douglas Phelps. Defendants City of Spokane, Meidl, Schwering, and Henry ("City Defendants") are represented by Brian Augenthaler and Stewart Estes. Defendant Bjornstad is represented by Lori Bemis. The motion was considered without oral argument.

After reviewing the briefing, record, and caselaw, the Court **grants** the motion as to the federal claims. No further amendment will be allowed.

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS -** 1

# BACKGROUND

This case was originally filed in the Superior Court of Spokane on October 6, 2023. City Defendants timely removed to the U.S. District Court for the Eastern District of Washington pursuant to 28 U.S.C § 1331 for Plaintiff's civil rights claims under 42 U.S.C. § 1983. All Defendants agreed on the removal.

Plaintiff Estate filed their First Amended Complaint on June 17, 2024, on behalf of deceased Clovy Jaramillo. It brings a wrongful death suit and claims Defendants committed negligence in violation of and for recovery under a survival statute pursuant to Wash. Rev. Code §§ 4.20.046 and 4.20.060; it also claims Defendants violated Mr. Jaramillo's civil rights under the Fourth Amendment and seek recovery under 42 U.S.C. § 1983. They seek general damages in excess of $950,000.00; punitive and exemplary damages; and attorneys fees and costs.

The following factual allegations set forth in the First Amended Complaint are accepted as true for the purpose of the present motion only.

> On or about October 6, 2020 around 3:20 pm, Spokane County 911 Dispatch received multiple citizen telephone calls regarding an adult male acting strangely in the area of Third Avenue and Thor Street [in Spokane, Washington]. The phone calls reported a male laying prone on the street and writhing before getting up and throwing himself in front of cars, denting cars from the force of hitting them, that callers were concerned about a potential drug overdose, and that callers observed him attempting to break windows of cars. One caller observed the male diving headfirst underneath and in front of a vehicle tire. Another call reported that the man ran across the street and ran into the side of her truck before the man climbed on top of another vehicle and was dragged off and pinned to the ground by several people.

City of Spokane Police Department officers Schwering and Henry were dispatched. When they arrived, a male, later identified as Clovy Jaramillo, "was pinned to the ground by a male and a female citizen. Jaramillo was laying face-down prone on the pavement. One citizen was positioned such that his knee was

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS ~ 2**

placed on Mr. Jaramillo's back." Jaramillo was sweating profusely, did not appear lucid, and did not comply with verbal orders. While placing him under arrest, Jaramillo "kicked his legs and screamed." Schwering noticed Jaramillo had "unexpected strength during the encounter and was periodically vomiting bile."

Schwering and Henry used "arrest tactics" including "vascular neck restraint" to try to detain Jaramillo. Hearing that officers were "actively fighting" with Jaramillo, Spokane Public School District 81 limited commission school resource officer Bjornstad "drove to the scene to assist the officers." Bjornstad assisted with closing the second handcuff. Schwering told the officers to "roll Mr. Jaramillo to his side into the recovery position to remove Mr. Jaramillo's backpack." Bjornstad crossed Jaramillo's legs and placed his body over them. After he was handcuffed, Jaramillo continued to vomit "profusely," "appeared to have a seizure," and began to slam his head into the pavement. Schwering "was concerned that Mr. Jaramillo would injure himself" and believed there was a basis to take him into custody under the Involuntary Treatment Act. A witness observed officers Schwering, Henry and Bjornstad administer a shot, believed to be a sedative.

At 3:42 p.m., medics arrived and commenced life saving measures. Jaramillo was unconscious. Jaramillo was transported to the hospital in critical condition, where he was intubated and treated for excited delirium, but died two weeks later. The officers did not inform transporting medics about the sedative. The autopsy determined the cause of death was "cardiopulmonary arrest due to excited-agitated delirium" and that prone restraint contributed to his death.

The City Defendants now seek dismissal of the claims for violation of the Fourth Amendment. Defendant Bjornstad joins in the City Defendants' motion and seeks dismissal of the Fourth Amendment claim asserted against him.

//

//

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS ~ 3**

## MOTION STANDARD

Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings may be brought at any time "[a]fter the pleadings are closed," but "early enough not to delay trial." The standard applicable to a court's resolution of a Rule 12(c) motion is the same as the standard applicable to a Rule 12(b) motion to dismiss for failure to state a claim. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule.").

"Judgment on the pleadings is properly granted when there is no issue of material fact, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)). A court must accept the complaint's factual allegations as true and construe those facts in the light most favorable to the non-movant, *id.*; however, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible on its face when the factual allegations allow a court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must set forth more than "the mere possibility of misconduct." *Id.* at 678.

If a court determines that judgment on the pleadings is warranted, it must then decide whether to grant leave to amend. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012). "Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency." *Id.* (reversing district court's dismissal under Rule 12(c) because plaintiffs should have been given opportunity to amend).

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS** - 4

"The Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage of litigation.'" *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). In reviewing a qualified immunity defense at the motion to dismiss stage, the question is "whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018).

## CITY DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS

In their present Motion, City Defendants state Plaintiff's First Amended Complaint does not differ substantively from the Complaint, and they argue the Court's rulings in its previous Order, ECF No. 39, should stand. Defendant Bjornstad joins the Motion. Plaintiff responded and claimed they meet the standard for a violation of Mr. Jaramillo's civil rights under the Fourth Amendment.

The First Amended Complaint alleges Defendant Officers violated Jaramillo's right to bodily integrity based on the Fourth Amendment when all three responding officers used "excessive force in apprehending" Jaramillo because they acted with negligence in failing to follow police department policies for excited delirium, by administering a sedative after handcuffing Jaramillo, and by failing to tell emergency responders about the sedative. Defendants seek dismissal for failure to state a claim and on the basis of qualified immunity.

### *Legal Standards*

Pursuant to 42 U.S.C. § 1983, the validity of an excessive force claim must be judged by reference to the specific constitutional standard that applies. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS ~ 5

Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id*. (emphasis omitted). In the Ninth Circuit, "once a seizure has occurred, it continues throughout the time the arrestee is in the custody of the arresting officers." *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir. 1985) (citation omitted).

The Fourth Amendment standard for excessive force looks at whether the Defendant's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Graham*, 490 U.S. at 397. The objective reasonableness test balances the nature and quality of the intrusion on a plaintiff's interest against the countervailing governmental interests at stake. *Id*. Factors to consider include the severity of the incident giving rise to the use of force, whether the plaintiff posed an immediate threat to the safety of the defendant or others, and whether the plaintiff was actively attempting to avoid being subdued or brought under control. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1198 (9th Cir. 2002).

### *Federal Claims Against the Officers*

Plaintiff's underlying facts for its claims of excessive force under the Fourth Amendment and pursuant to 42 U.S.C. § 1983 have not substantively changed in their First Amendment Complaint. The Court dismissed these claims with leave to amend in its previous Order. ECF No. 39. As noted in the Order, Jaramillo was a danger to himself and others prior to his seizure:

> He was throwing himself in front of cars, running into cars and denting them, attempting to break windows of cars, hiding in front of a vehicle tire, and climbing on top of a vehicle before citizens pinned him down face-down prone on the pavement. When officers responded to the city intersection in the middle of the afternoon, it is alleged that Jaramillo was sweating profusely, did not appear lucid, failed to comply with verbal orders, physically resisted arrest (was "actively fighting"), kicked his legs, was combative, acted with unexpected strength, screamed, and periodically vomited bile.

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS** - 6

> [. . .]
> Schwering and Henry used a "vascular neck restraint," placed Jaramillo in handcuffs, then rolled him onto his side "into the recovery position," and then Officer Bjornstad placed his body on Jaramillo's crossed legs.

Jaramillo was resisting officers by kicking and actively fighting. None of the facts plausibly allege the officers used excessive force under the Fourth Amendment standard in their response.

Further, Plaintiff again does not allege that any of the tactics used by the officers presented an unreasonable risk. The Ninth Circuit has found officers actions were not objectively reasonable in using chokeholds against a person who is not resisting, *see Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019); however, in the case of an officer who pulled a person from a vehicle to handcuff them, the officer acted objectively reasonable in his tactics because the person was resisting arrest, *see Demarest v. City of Vallejo, Calif.*, 44 F.4th 1209, 1225–26 (9th Cir. 2022). Here, Jaramillo was resisting help and arrest.

Plaintiff's opposition brief again asserts contradictory facts, not contained in the First Amended Complaint, claiming that Jaramillo was "not struggling" and in a prone restraint by Officers Schwering and Henry. Factual allegations not set forth in the First Amended Complaint (or otherwise incorporated by reference) have no legal significance on motion to dismiss and are disregarded. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Plaintiff also claims the officers administered an unidentified sedative without appropriate training, which contributed to Jaramillo's death. Individuals "possess[ ] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 229 (1990). But the Due Process Clause permits a state to treat a detainee suffering a serious mental illness with antipsychotic drugs against their will if the detainee is a danger to themselves or

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS - 7**

others and the treatment is in their best interest. *Id.* at 227.

Here, the officers administered a sedative when confronted with a "clear case of excited delirium." They responded to calls of a potential drug overdose and came upon a man struggling in the street and resisting attempts to help. He was a danger to himself by slamming into cars and a danger to the community that tried to stop him. The officers responded to an emergency medical situation and administered a sedative as a part of their assessment of the circumstances. These facts alone are insufficient to state a claim for a constitutional violation of rights. Further, as noted in the previous Order and based on the same facts presented in the operative Amended Complaint:

> Moreover, even assuming Plaintiff could plead a violation of a constitutional right, the facts, as alleged, suggest that Jaramillo was incompetent to refuse medical treatment, that officers were responding to an emergency (a potential overdose), and Jaramillo was in need of emergency medical assistance, entitling defendants to qualified immunity. *Compare Haas v. Cnty. of El Dorado*, No. 2:12-cv-00265-MCE-KJN, 2012 WL 1414115 (E.D. Cal. April 23, 2012) (denying qualified immunity to paramedic who administered tranquilizer at direction of law enforcement where plaintiff was conscious, competent to refuse medical assistance, presented no danger, and there was no medical emergency).

Finally, the Amended Complaint realleges the same facts and claims for AMR's arrival and what occurred in the time Jaramillo was transported from the scene to the hospital. The Court again finds the Amended Complaint does not allege the officers acted with deliberate indifference to Jaramillo's serious medical needs, nor claim medical personnel asked for information, nor claim the officer's actions or omissions had any impact on the access to or quality of Jaramillo's medical treatment or were related to his cause of death. *See Estelle v. Gamble*, 429 U.S. 97 (1976).

//

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS - 8**

### *Monell Claims against the City and Chief Meidl*

The First Amended Complaint alleges the City and Chief Meidl failed to adopt proper policies by not implementing appropriate training, failed to adequately investigate, and failed to discipline the officers involved in the incident. The Court previously dismissed these claims with leave to amend. ECF No. 39.

To establish municipal liability a under 42 U.S.C. § 1983, a plaintiff must allege and show: (1) the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted); *see also Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978). *Monell* claims require a plaintiff to show an underlying constitutional violation. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

Plaintiff again fails to adequately allege a constitutional violation to assert a *Monell* claim against the City or Chief Meidl. *See id.* Plaintiff does not cite a City policy that led to the alleged violation or show a pattern of violations, and the First Amended Complaint contains no allegations to support supervisory liability or ratification by Chief Meidl. Plaintiff makes conclusory allegations, which cannot survive the pleading standard. *See Iqbal*, 556 U.S. at 678. There are no new facts to state a claim amounting to deliberate indifference here.

The claims in the First Amended Complaint do not allege conduct that is objectively unreasonable, and they fail to meet the excessive force standard under the Fourth Amendment and pursuant to 42 U.S.C. § 1983. Further, there is no issue of material fact. As such, Plaintiff has failed to state a claim upon which the Court can grant relief, and all Defendants are entitled to judgment as a matter of law.

The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS - 9**

**NO LEAVE TO AMEND**

In considering a motion for judgment on the pleadings, the district court has discretion to grant partial judgment on the pleadings or to grant leave to amend. Regardless of whether a plaintiff has requested leave to amend, they are permitted to do so if "justice so requires." Fed. R. Civ. P. 15(a)(2); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). A court may deny leave to amend when it is sought in bad faith, would cause undue delay, would prejudice the opposing parties, or would be futile. *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010).

Here, Plaintiff requested leave to amend a second time if the Court found for Defendants' motion. Given the facts before the Court and that no new facts were presented in the Amended Complaint, the Court finds further amendment futile.

Accordingly, **IT IS HEREBY ORDERED**:

1. The City Defendants' Second Motion for Judgment on the Pleadings, ECF No. 39, is **GRANTED**.

2. The First Amended Complaint is **DISMISSED** as to **all defendants** and **without leave to amend** for all federal claims.

3. The remaining state law claims are **DISMISSED without prejudice**.

4. The Clerk of Court is directed to enter judgment in favor of all Defendants and against Plaintiff on Plaintiff's federal claims.

**IT IS SO ORDERED**. The Clerk of Court is hereby directed to file this Order, provide copies to counsel, and to **close** the file.

**DATED** this 4th day of September 2024.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS - 10**